UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
MARK ANGEL PAGAN,

Plaintiff,

v.

CORRECTIONAL MEDICAL SERVICES and the
CITIZENS' POLICY AND COMPLAINT
REVIEW COUNCIL; and DOMINICK ORSINO,
JOSEPH RYAN, EDWARD KISTNER, TOM
ROOME, BRIAN O'DONOHUE, TERRY
HANSON, MARY DELGADO, OLADAYO
KEHINDE, CARMAN BURGOS, and FRANCES
SULLIVAN, in their individual and official
capacities,

Defendants.
------------------------------------------------------------x

**OPINION AND ORDER**

11-CV-1357 (ER)

RAMOS, D.J.:

Pro se plaintiff Mark Angel Pagan brings this suit pursuant to 42 U.S.C. § 1983 against twelve defendants whom he alleges violated his constitutional rights while he was incarcerated at the Orange County Correctional Facility ("OCCF"). Specifically, he claims that the defendants deprived him of his Eighth Amendment right to medical treatment by rejecting his requests for surgery on his left knee.

Mr. Pagan has named two organizations and ten individuals as defendants: (1) Correctional Medical Services ("CMS"); (2) Corrections Administrator Dominick Orsino; (3) Administrative Captain Joseph Ryan; (4) Grievance Coordinator Sergeant Edward Kistner; (5) Health Services Administrator Tom Roome; (6) former Health Services Administrator Brian O'Donohue (sued here as Brian O'Donnell); (7) facility Medical Director Terry Hanson; (8)

1

former facility Medical Director Mary Delgado; (9) Dr. Oladayo Kehinde (originally sued as a John Doe); (10) nurse practitioner Carman Burgos (originally sued as a Jane Doe); (11) the Citizens' Policy and Complaint Review Council ("CPCRC"); and, (12) CPCRC's Chair Frances Sullivan.  Second Am. Compl. at 2.  Mr. Pagan sues each of the natural person defendants in both their individual and official capacities.

Six motions are before the Court.  First, three of the OCCF defendants—Mr. O'Donohue, Ms. Delgado, and Dr. Kehinde—move for summary judgment on the ground that all of Mr. Pagan's claims against them are barred by the statute of limitations.  Doc. 75.  Second, the CPCRC, which denied appeals of Mr. Pagan's grievances, and its Chair Frances Sullivan, move to dismiss Mr. Pagan's claims against them on multiple grounds.  Doc. 84.  Third, Ms. Burgos has filed a motion to vacate default and/or compel acceptance of service of answer.  Doc. 78.  Fourth, Mr. Pagan moves to amend to add Dr. Muhammad Shahid and Dr. Marie Chiao.  Doc. 100.  Fifth, Mr. Pagan moves for discovery sanctions.  Doc. 104.  Sixth, Mr. Pagan moves for appointment of pro bono counsel.  Doc. 114.

**I. Mr. Pagan's Factual Allegations**

Mr. Pagan was incarcerated at OCCF from September 16, 2004 to May 27, 2005 and again from December 18, 2007 to July 16, 2008.  Second Am. Compl. ¶¶ 2, 23.

Mr. Pagan alleges that, by the time he was processed for his first period of incarceration at OCCF, he was already suffering from an injury to his knee.  *Id.* ¶ 1.  He claims he received "nothing more than Tylenol . . . and an x-ray for chronic pain and swelling" despite his requests for additional treatment.  *Id.* ¶ 3.  Specifically, he alleges that he asked the facility physician—

whom he mistakenly identifies as Dr. Kehinde[1]—to let him visit an orthopedic specialist to examine his knee, to no avail. *Id.* ¶ 4.

Frustrated with what he took to be inadequate medical treatment, on March 13, 2005 Mr. Pagan filed a grievance (hereinafter "First Grievance") against the facility staff. *Id.* ¶ 5.

Mr. Kistner, the Grievance Coordinator, denied Mr. Pagan's grievance. *Id.* ¶ 7. Mr. Pagan appealed the denial to Mr. Orsino, who also denied the appeal. *Id.* Mr. Pagan appealed again, this time to the Citizens' Policy and Complaint Review Council. *Id.* Ms. Sullivan, on behalf of the CPCRC, denied the appeal. *Id.*

Mr. Pagan alleges that Mr. Ryan, OCCF's Administrative Captain, responded to the grievance informally as well, telling Mr. Pagan in person that any surgery on his knee would have to wait until he was transferred to another facility. *Id.* ¶ 6. Mr. Pagan also alleges that the investigation of the First Grievance revealed that Mr. Ryan had personally cancelled scheduled consultations with an orthopedic specialist. *Id.* ¶ 8.

On May 27, 2005, Mr. Pagan was transferred out of OCCF. *Id.* ¶ 10. Between that date and December 18, 2007, a period of approximately two and one half years, Mr. Pagan was incarcerated briefly at the Downstate Correctional Facility and then at greater length at the Elmira Correctional Facility and the Attica Correctional Facility. *See id.* ¶¶ 10-22. At Elmira, Mr. Pagan alleges that he saw an orthopedic specialist and received an MRI, which showed that his left knee was significantly injured. *Id.* ¶¶ 14-15. At Attica, he alleges that he received physical therapy and was recommended for an unspecified "intervention." *Id.* ¶¶ 21-22.

Mr. Pagan then returned to OCCF and alleges that he asked to be seen by an orthopedic specialist and to have his medical records sent to OCCF. *Id.* ¶¶ 24-26. On February 18, 2008,

---

[1] Mr. Pagan is mistaken because, as he concedes in his response to Defendants' Rule 56.1 Statement, Dr. Kehinde was not even employed at OCCF until June or July 2005. Pl.'s Response to Rule 56.1 Statement ¶ 21. Mr. Pagan ended his first term at OCCF in May 2005. Second Am. Compl. ¶ 10.

3

Mr. Pagan filed a second grievance ("Second Grievance"), claiming that his medical treatment had been inadequate because he had not received the surgery he sought. *Id.* ¶ 28. As in 2005, Mr. Kistner denied the Second Grievance, and Mr. Orsino and the CPCRC—through Ms. Sullivan—denied the appeals. *Id.* ¶ 30. Mr. Pagan alleges that, in retaliation for filing for the Second Grievance, Mr. Roome required Mr. Pagan to submit to a mental health evaluation. *Id.* ¶ 29.

Mr. Pagan admits that, despite denying his Second Grievance, OCCF staff did schedule him for a consultation with orthopedist Marc Appel, who examined him on March 4, 2008. *Id.* ¶ 31. Mr. Pagan has submitted to the Court Dr. Appel's report, which does state that Mr. Pagan requires surgery to his ACL, but describes the surgery as "elective." Appel Report ¶ 5.

In April, Mr. Pagan spoke with Mr. Hanson, the OCCF's medical director, about Dr. Appel's recommendation. Second Am. Compl. ¶ 36. Mr. Pagan alleges that Mr. Hanson told him that, because the surgery he sought was elective, it would not be performed with state funds. *Id.* ¶ 37.

In May, Mr. Pagan saw Dr. Muhammad Shahid, who recommended a second orthopedic consultation. *Id.* ¶ 38. Dr. Appel examined Mr. Pagan again on May 13, 2008 and again recommended "[e]lective" surgery. Second Appel Report ¶ 4.

Mr. Pagan mistakenly[2] alleges that on May 18, 2008, yet another physician, Dr. Marie Chiao, recommended an offsite consultation for surgery. Second Am. Compl. ¶ 40.

On July 15, 2008, Mr. Pagan filed a new grievance ("Third Grievance"), and the next day he was transferred out of the OCCF. *Id.* ¶¶ 45-46. As a result, the Third Grievance was not adjudicated.

---

[2] Mr. Pagan is mistaken because Dr. Chiao stated in her affidavit that she has not been employed by CMS or treated any inmate at OCCF since 2005, *see* Chiao Aff., ¶ 4-5, and Mr. Pagan did not dispute Dr. Chiao's statement in his reply to Defendants' opposition to his motion to amend. *See* Pl.'s Reply to Def.'s Mot. to Amend.

4

Mr. Pagan alleges that on January 27, 2009, while incarcerated at another facility, he received the surgery he sought and claims that there was additional damage to his knee that could have been prevented had OCCF staff sent him for surgery earlier. *Id.* ¶ 50.

## II. Discussion

### A. Motion for Summary Judgment by Ms. Delgado, Dr. Kehinde, and Mr. O'Donohue

Ms. Delgado, Dr. Kehinde, and Mr. O'Donohue move for summary judgment. They argue that Mr. Pagan's claims against them are barred by the relevant statute of limitations.

Summary judgment is granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, a district court is instructed not to "weigh evidence," but to "resolve all ambiguities and draw all inferences in favor of the non-moving party" so as to ascertain "whether any reasonable trier of fact would have to conclude that the evidence was so strongly in the [movant's] favor that there remained no genuine issue of material fact for it to resolve." *Nagle v. Marron*, 663 F.3d 100, 105 (2d Cir. 2011).

In general, "[t]he statute of limitations for claims brought under Section 1983 is governed by state law." *Shomo v. City of New York*, 579 F.3d 176, 181 (2d Cir. 2009). Under New York state law, there is a "three-year period for personal injury actions." *Id.* (reviewing a suit in which an incarcerated plaintiff brought, inter alia, a claim for inadequate medical care). The statute of limitation starts running in a Section 1983 case "when the plaintiff knows or has reason to know of the harm." *Id.* (quotation omitted).

Mr. Pagan filed his initial Complaint on February 16, 2011. He then filed an Amended Complaint and later, a Second Amended Complaint. But for the purposes of the statute of

5

limitations, "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."  Fed. R. Civ. P. 15(c)(1).  Therefore, New York's statute of limitation would bar any claim against defendants based on events prior to February 16, 2008.

It is not disputed that none of the three moving defendants worked at OCCF on or after February 16, 2008.  Ms. Delgado worked as a nurse and then a Health Services Administrator at CMS from 2003 to late December 2006, and "[t]he only treatment Ms. Delgado ever provided to [Mr. Pagan] was to discontinue one medication on February 3, 2005."  Pl.'s Response to Rule 56.1 Statement at ¶¶ 17, 20.  Mr. O'Donohue worked as a nurse and then a Health Services Administrator at CMS from 2002 to 2006.  *Id.* ¶ 24.  Mr. Pagan does not dispute these facts.  *Id.* at 6-7.

Dr. Kehinde worked as a Medical Director for CMS from June or July 2005 to until late October or early November 2006.  *Id.* ¶ 21.  As explained above, Mr. Pagan left OCCF on May 27, 2005 and did not return until December 18, 2007.  Even though Mr. Pagan claimed in his Complaint that he was treated by Dr. Kehinde, Mr. Pagan does not dispute that Dr. Kehinde did not work at OCCF at the time Mr. Pagan thought Dr. Kehinde had treated him and does not dispute that his own medical records make no mention of Dr. Kehinde.  *Id.* ¶¶ 21, 23.

Therefore, the statute of limitations presumptively bars Mr. Pagan's claims against Ms. Delgado, Dr. Kehinde, and Mr. O'Donohue.

Despite conceding that none of these defendants interacted with him during the non-barred time period, Mr. Pagan argues that he has still alleged timely claims against them under

the continuing violations doctrine, which acts as "an exception to the normal knew-or-should-have-known accrual date." *Shomo*, 579 F.3d at 182 (quotation omitted).

The Second Circuit has held that "the continuing violation doctrine can apply when a prisoner challenges a series of acts that together comprise an Eighth Amendment claim of deliberate indifference to serious medical needs." *Id.*  But the Circuit cautioned: "That the continuing violation doctrine can apply, however, does not mean it must." *Id.*  In order "[t]o assert a continuing violation for statute of limitations purposes, the plaintiff must allege both the existence of an ongoing policy of deliberate indifference to his or her serious medical needs and some non-time-barred acts taken in the furtherance of that policy." *Id.* (brackets and quotation omitted).

In *Shomo*, the Second Circuit held that plaintiff's complaint had sufficiently pled a continuing violation because his complaint "allege[d] a policy of doctors and prison staff disregarding treatment recommendations." *Id.*  Notwithstanding this holding, the panel affirmed the district court's dismissal of the plaintiff's inadequate medical care claims against two physicians as time-barred.  *See id.* at 183-84.  One physician was dismissed because "denial of Shomo's request for a second opinion [did] not fall within a policy of disregarding medical recommendations." *Id.* at 183.  Another physician was dismissed because "[t]here [wa]s no allegation that [the physician] ignored a medical recommendation." *Id.* at 184.

Mr. Pagan's claims against Ms. Delgado, Dr. Kehinde, and Mr. O'Donohue do not satisfy the continuing violation exception to the statute of limitations because he does not allege that they committed any acts as part of a policy of deliberate indifference to his medical needs. Indeed, his Complaint makes no reference to any specific acts of Ms. Delgado or Mr. O'Donohue whatsoever.

The Complaint does mention Dr. Kehinde and that he saw and treated Mr. Pagan, but Mr. Pagan's response to Defendants' Rule 56.1 Statement concedes that Dr. Kehinde did not work at OCCF while Mr. Pagan was incarcerated there. *See* Doc. 97 at 7-8. Even if Dr. Kehinde had treated Mr. Pagan, a plaintiff does not state a valid claim for inadequate medical treatment by alleging "that a physician has been negligent in diagnosing or treating a medical condition," *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011), let alone a claim that could comprise a policy of deliberate indifference.

Mr. Pagan's claims against Ms. Delgado, Dr. Kehinde, and Mr. O'Donohue, therefore, do not satisfy the continuing violation exception and are barred by the statute of limitations. Accordingly, Defendants' motions for summary judgment are **GRANTED**.

**B. Motion to Dismiss by CPCRC and Ms. Sullivan**

The CPCRC and its Chair, Ms. Sullivan, move to dismiss Mr. Pagan's claims against them for failure to state a claim under Federal Rule of Civil Procedure 12(b)(1) and (6).

In resolving a motion to dismiss, the Court is guided by the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937 (2009). The Second Circuit recently applied *Twombly* and *Iqbal* in the context of a pro se complaint in *Hill v. Curcione*, 657 F.3d at 122.

Following *Twombly*, the Circuit explained that the "plaintiff has the responsibility to set forth in the complaint facts that state a claim that is plausible on its face." *Id.* (citing *Twombly*, 550 U.S. at 570). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949). The Circuit also stated that, in a "review of the

sufficiency of a pro se complaint such as [plaintiff's], we are constrained to conduct our examination with special solicitude, interpreting the complaint to raise the strongest claims that it suggests." *Id.* (quotations and brackets omitted).

Mr. Pagan pleads three claims relevant to this motion: one against CPCRC; another against Ms. Sullivan in her official capacity; and a third against Ms. Sullivan in her individual capacity.

The Supreme Court has explained that individual capacity "suits seek to impose personal liability upon a government official for actions he [or she] takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citations and quotations omitted).

Therefore, Mr. Pagan's suit against CPCRC and his suit against CPCRC's Chair, Ms. Sullivan, in her official capacity, are one in the same. Mr. Pagan realizes this, as he cites to *Santiago v. New York State Dept. of Corr. Serv.*, 945 F.2d 25, 32 (2d Cir. 1991), for the proposition that "a plaintiff seeking prospective relief from the state must name as defendant a state official rather than the state or a state agency directly, even though in reality the suit is against the state."

But, as *Santiago* suggests, such a suit may only be for prospective, injunctive relief. It is well-settled law that "absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action against a State in federal court." *Graham*, 473 U.S. at 169. "This bar remains in effect when State officials are sued for damages in their official capacity." *Id; see also Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002) (applying *Graham* to a suit against a New York state corrections agency and its officials sued in their official capacities).

9

It is unclear from the face of Mr. Pagan's Complaint whether he is seeking prospective, injunctive relief. However, even if Mr. Pagan had sought such relief, it would not be appropriate in his case. Mr. Pagan has received the surgery he requested. *See* Second Am. Compl. ¶ 50. Accordingly, the only reasonable reading of his Complaint is that he is seeking only money damages. Accordingly, Defendants' motions to dismiss Mr. Pagan's claims against CPCRC and against Ms. Sullivan in her official capacity are **GRANTED**.

Of course, Mr. Pagan may allege a claim for money damages against Ms. Sullivan in her *individual* capacity. Ms. Sullivan, however, offers three arguments in favor of dismissing Mr. Pagan's individual capacity claim against her. One, she argues that the statute of limitations bars Mr. Pagan's claim as to his First Grievance, which was filed in 2005. Two, she argues that Mr. Pagan's claim as to his Third Grievance should be dismissed because he has failed to exhaust administrative remedies. Three, she argues that Mr. Pagan's claim against her should be dismissed in its entirety because he has failed to sufficiently allege her personal participation in any violation of his constitutional rights.

The Court need not reach the statute of limitations or exhaustion issues because Ms. Sullivan is correct that Mr. Pagan's Complaint does not sufficiently allege her personal participation in the alleged constitutional violations.

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Shomo*, 579 F.3d at 184. The sole factual allegations against Ms. Sullivan are that she denied second-order appeals of Mr. Pagan's First and Second Grievances.

Courts in this district have repeatedly held that "affirming the administrative denial of a prison inmate's grievance by a high-level official is insufficient to establish personal involvement

under section 1983." *Manley v. Mazzuca*, No. 01-cv-5718, 2007 WL 162476 at *10 (S.D.N.Y. Jan. 19, 2007) (Karas, D.J.); *see also Foreman v. Goord*, No. 02-cv-7089, 2004 WL 1886928 at *7 (S.D.N.Y. Aug. 23, 2004) (Scheindlin, D.J.) ("The fact that [a prison official] affirmed the denial of plaintiff's grievances is insufficient to establish personal involvement."); *Thompson v. New York*, No. 99-cv-9875, 2001 WL 636432 at *7 (S.D.N.Y. Mar. 15, 2001) (Daniels, D.J.) (finding that defendant was not personally involved in a constitutional violation by denying a grievance and noting that "virtually every prison inmate who sues for constitutional torts by prison guards could name the Superintendent as a defendant since the plaintiff must pursue his prison remedies and invariably the plaintiff's grievance will have been passed upon by the Superintendent.").

Mr. Pagan could, however, argue—and at times appears to suggest—that his case is distinguishable from the cases cited above because Ms. Sullivan was aware of a physician's recommendation that Mr. Pagan should receive the requested surgery. This argument would, for example, distinguish Mr. Pagan's case from *Joyner v. Greiner*, 195 F.Supp. 2d 500 (S.D.N.Y. 2002), dismissing a prison superintendent in part on the grounds that "a prison administrator is permitted to rely upon and be guided by the opinions of medical personnel concerning the proper course of treatment administered to prisoners, and cannot be held to have been 'personally involved' if he does so." *Id.* at 506.

But this argument does not match the timeline Mr. Pagan offers in his Complaint. He alleges that Dr. Appel recommended the surgery *after* Mr. Pagan had filed his Second Grievance. Mr. Pagan's First and Second Grievances did not include any statement that a medical professional had recommended surgery, only *Mr. Pagan's* opinion that he should receive

11

surgery.  Mr. Pagan does not allege that Ms. Sullivan took any action with respect to his Third Grievance, the only grievance that mentioned Dr. Appel's recommendation.

Thus, even assuming arguendo that denial of an appeal of an administrative grievance could give rise to personal involvement in a constitutional violation if a plaintiff proved that the individual denying the grievance had knowledge that prison officials had acted contrary to medical advice, Ms. Sullivan is not alleged to have such knowledge.  No other allegation in Mr. Pagan's Complaint suggests that Ms. Sullivan had any personal involvement in the alleged violation of his constitutional rights.

Therefore, Mr. Pagan has failed to state a claim against Ms. Sullivan in her individual capacity.  Her motion to dismiss all claims against her is **GRANTED**.

**C. Motion to Vacate Default and/or Compel Acceptance of Service of Answer by Ms. Burgos**

Ms. Burgos has filed a Motion to Vacate Default and/or Compel Acceptance of Service of Answer.  The relevant facts are as follows.

Mr. Pagan filed his initial Complaint on February 16, 2011, naming Jane Doe among the defendants.  He filed an Amended Complaint on March 30, 2011, with Jane Doe still included.  On June 21, 2011, Mr. Pagan filed his Second Amended Complaint, which replaced Jane Doe with nurse practitioner Carman Burgos.  Ms. Burgos was served with the Second Amended Complaint on August 9, 2011.

Ms. Burgos' counsel neglected to answer on her behalf in 2011.  No default was entered.  On January 23, 2012, Mr. Pagan submitted to the Court a proposed default judgment as to Ms. Burgos.  Not long after, on January 31, 2012, Mr. Pagan was served with Ms. Burgos' Answer.

On February 2, 2012, Ms. Burgos filed a Motion to Vacate Default and/or Compel Acceptance of Service of Answer.

Mr. Pagan's request for a default judgment did not follow the two-step process the Federal Rules of Civil Procedure requires. Under the rules, a party seeking a default is required to file an affidavit seeking a default. *See* Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."). Only then may a district court enter a default judgment. Fed. R. Civ. P. 55(b); *see also Tarbell v. Jacobs*, 856 F.Supp. 101, 104 (N.D.N.Y. 1994) (explaining that before "a default judgment under Rule 55(b), there must be an entry of default pursuant to Rule 55(a)."). Mr. Pagan did not correctly seek a default in this case, and the clerk did not enter one.

But bearing in mind that a "court should be particularly solicitous of pro se litigants who assert civil rights claims" and that "litigants who are incarcerated also receive certain special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), the Court will accept Mr. Pagan's request for a default judgment as against Ms. Burgos as properly made. The same is hereby **DENIED**.

Requests for a default judgment face a demanding standard. The Second Circuit has stated "a strong preference for resolving disputes on the merits . . . because a default judgment is the most severe sanction which the court may apply." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 129 (2d Cir. 2011) (quotations omitted). The Circuit has described "a district court's discretion in proceeding under Rule 55 as circumscribed" and explained that "[d]efault judgments are generally disfavored and are reserved for rare occasions." *Id.* (quotations and citations omitted).

13

In contrast, a default may be set aside for good cause. Fed. R. Civ. P. 55(c). In considering whether to set aside a default, district courts are to consider the willfulness of the default, the prejudice to plaintiff, and the existence of a meritorious defense. *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97-98 (2d Cir. 1993). In this case, the default was an inadvertent mistake on the part of Defendant's counsel. Ms. Burgos' counsel appeared on behalf of nine other defendants in this matter and answered on their behalf in a timely manner. He simply neglected to file a timely answer for Ms. Burgos. Mr. Pagan will also suffer no prejudice from the grant of Ms. Burgos' motion to file an answer. Discovery with respect to Ms. Burgos is proceeding along with the rest of discovery in this multiple defendant suit. Importantly, Ms. Burgos likely has a valid statute of limitations defense because the only allegations Mr. Pagan makes against her relate to his first term of incarceration at OCCF, which pre-dates the tolling date of February 16, 2008 by two and one-half years.

Ms. Burgos' Motion to Vacate Default and/or Compel Acceptance of Service of Answer is **GRANTED** insofar as Mr. Pagan is ordered to accept service of the Answer Ms. Burgos has filed and he has received.

### D. Mr. Pagan's Motion to Amend

Mr. Pagan moves to amend his Complaint to add two more defendants, Dr. Muhammad Shahid and Dr. Marie Chiao.

Under the Federal Rules, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Counsel for the OCCF Defendants represents Dr. Shahid

and does not oppose Mr. Pagan amending his Complaint to add Dr. Shahid as a defendant. Accordingly, Mr. Pagan's Motion to Amend is **GRANTED** as to Dr. Shahid.

Dr. Chiao, however, opposes Mr. Pagan's Motion to Amend as it relates to her.  She contends that the statute of limitations would bar any claim Mr. Pagan could allege against her. "Generally, leave to amend should be freely given, Fed. R. Civ. P. 15(a), and a pro se litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim."  *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (quotations omitted).

But a district court may deny a motion to amend on the ground that the statute of limitations would bar any claim against a defendant to be added.  *See, e.g., Jennis v. Rood*, 310 F. App'x 439, 440 (2d Cir. 2009) ("The district court reasonably concluded that the proposed amendment was futile since the statute of limitations had run and the relation-back doctrine did not apply.").

Dr. Chiao stated in her affidavit that she has not been employed by CMS or treated any inmate at OCCF since May 28, 2005.  Chiao Aff., ¶ 4-5.  Mr. Pagan does not dispute Dr. Chiao's statement in his reply to Defendants' opposition to his motion to amend even though his Complaint alleges that she treated him in 2008.  Even if Mr. Pagan were to amend his Complaint so as to state a claim against Dr. Chiao stemming from the period in which she did work at OCCF, the statute of limitations would bar such a claim.

Accordingly, Mr. Pagan's Motion to Amend is **DENIED** as to Dr. Chiao.

**E. Mr. Pagan's Motion for Discovery Sanctions against Ms. Sullivan**

Mr. Pagan moves for discovery sanctions under Federal Rule of Civil Procedure 37 against CPCRC Chair Sullivan. He claims that Ms. Sullivan failed to timely respond to his interrogatories and requests for documents.

Federal Rule of Civil Procedure 37 provides that "[t]he court where the action is pending may, on motion, order sanctions if . . . a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(d)(1)(A).

But sanctions are inappropriate here for two reasons. First, Mr. Pagan failed to confer or attempt to confer with Counsel for Ms. Sullivan prior to filing this motion.[3] Rule 37 requires that "a motion for sanctions for failing to answer or respond must include a certification that the movant has in good faith conferred or attempted to confer with the party failing to act in an effort to obtain the answer or response without court action."

Second, and more important, Ms. Sullivan had no need to respond to Mr. Pagan's interrogatories or requests for documents while her motion to dismiss was pending. Local Civil Rule 33.2(d) provides that in suits brought by incarcerated plaintiffs, "requests . . . shall be answered within 120 days of service of the complaint on any named defendant except . . . if a dispositive motion is pending."

Ms. Sullivan was within her rights to not respond to discovery requests until the Court had disposed of her motion to dismiss. Therefore, Mr. Pagan's motion for discovery sanctions against her is **DENIED**.

---

[3] Mr. Pagan did not certify otherwise in his motion or his reply. *See* Pl.'s Mot. for Sanctions; Pl.'s Reply.

**F. Mr. Pagan's Motion for Appointment of Pro Bono Counsel**

Mr. Pagan has also moved for the Court to appoint pro bono counsel to represent him in this matter.

Courts do not have the power to obligate attorneys to represent pro se litigants in civil cases. *Mallard v. U.S. Dist. Ct. for the S. Dist. of Iowa*, 490 U.S. 296, 310 (1989). Instead, pursuant to 28 U.S.C. § 1915(e)(1), the Court may, in its discretion, order that the Pro Se Office request that an attorney represent an indigent litigant by placing the matter on a list that is circulated to attorneys who are members of the Court's Pro Bono Panel. *Palacio v. City of New York*, 489 F. Supp. 2d 335, 344 (S.D.N.Y. 2007). The standards governing the appointment of counsel in pro se cases were set forth by the Court of Appeals in *Hendricks v. Coughlin*, 114 F.3d 390, 392 (2d Cir. 1997), *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989), and *Hodge v. Police Officers*, 802 F.2d 58, 60-61 (2d Cir. 1986). Collectively, these cases stand for the principle that the Court must "first determine whether the indigent's position seems likely to be of substance," *Hodge*, 802 F.2d at 61, and, if this threshold requirement is met, then the Court must consider additional factors including the pro se litigant's "ability to handle the case without assistance," *Cooper*, 877 F.2d at 172; *accord Hendricks*, 114 F.3d at 392.

At this stage the Court is unable to conclude that Plaintiff's claims are likely to have merit, although naturally that may change as the litigation progresses. Mr. Pagan has ably represented himself to date. He has filed several motions and opposed Defendants' motions. He will, no doubt, continue to do so. Accordingly, Mr. Pagan's Motion for Appointment of Pro Bono Counsel is **DENIED** without prejudice.

### III. Conclusion

Ms. Delgado's, Dr. Kehinde's, and Mr. O'Donohue's motions for summary judgment on all of Mr. Pagan's claims against them are GRANTED. The Clerk of the Court is respectfully directed to terminate this motion (Doc. 75) and to terminate these parties from the lawsuit.

CPCRC's and Ms. Sullivan's motions to dismiss all of Mr. Pagan's claims against them are GRANTED. The Clerk of the Court is respectfully directed to terminate this motion (Doc. 84) and to terminate these parties from the lawsuit.

Ms. Burgos' Motion to Vacate Default and/or Compel Acceptance of Service of Answer is GRANTED. The Clerk of the Court is respectfully directed to terminate this motion (Doc. 78).

Mr. Pagan's Motion to Amend GRANTED as to Dr. Shahid and DENIED as to Dr. Chiao. The Clerk of the Court is respectfully directed to terminate this motion (Doc. 100).

Mr. Pagan's Motion for Discovery Sanctions against Ms. Sullivan is DENIED. The Clerk of the Court is respectfully directed to terminate this motion (Doc. 104).

Mr. Pagan's Motion for Appointment of Pro Bono Counsel is DENIED without prejudice. The Clerk of the Court is respectfully directed to terminate this motion (Doc. 114). It is SO ORDERED.

Dated: June 6, 2012
White Plains, NY

Edgardo Ramos, U.S.D.J.